#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE WESTERN DISTRICT OF TENNESSEE
#### EASTERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )   )   | |
| **Plaintiff,** ) )   | |
| **v.** ) )   | Cr. No. 20-cr-10048-STA |
| **JUSTIN COFFMAN,** ) )   )   | |
| **Defendant.** )   | |

### ORDER GRANTING MOTION TO SUPPRESS EVIDENCE

Before the Court is Defendant Justin Coffman's Motion to Suppress Evidence. (ECF No. 28.) Coffman seeks to suppress all evidence obtained on June 2, 2020 pursuant to the search of Coffman's residence. The government has responded in opposition. For the reasons set forth below, the motion is **GRANTED**.

### BACKGROUND

Coffman is charged with being an unlawful user of a controlled substance while possessing firearms in violation of 18 U.S.C. § 922(g)(3). On June 2, 2020, officers with the Jackson Police Department executed a search warrant at Coffman's residence located at 1243 Whitehall Street, Lot #4, Jackson, Madison County, Tennessee. The warrant was issued by Circuit Court of Madison County Judge Roy Morgan and was supported by an affidavit sworn to by Major Phillip Kemper, an Investigator with the Jackson Police Department.

According to the affidavit, Coffman first came to the attention of law enforcement on May 28, 2020, after a Jackson Police Officer discovered several pictures posted to a Facebook page titled, "The Gunpowder Plot." An individual by the name of Justin Coffman "re-posted" The

1

Gunpowder Plot's post on his own personal page.  The pictures, which are attached to the affidavit as Exhibit A, appear to show a person standing with his back to the camera and his hands held behind his back.  In one hand, he is holding a bottle with cloth partially stuffed into the neck.  In another hand, he is holding a lighter.  The person is centered in the foreground of the picture; in the background is a police vehicle parked against the wall of what appears to be a street alley.  The post's caption states, "Was saving these pictures but now seems like a good time. 'You will bathe in the flames born from your hatred.'"  The Jackson police officer brought the images to the attention of her supervisor who then sent them out in an "officer safety" email to all Jackson Police Department officers.  The matter was referred for investigation and, on May 29, 2020, Lieutenant Chris Chestnut spoke to Jeff Stevens, the owner of Tattoo Station, a business located in Jackson.  Mr. Stevens informed the Lieutenant that Coffman was an acquaintance of his and that Coffman was friends with one of his employees, whereupon Lieutenant Chestnut asked Mr. Stevens if he could contact Coffman and ask him to call Lieutenant Chestnut.  That same day, Coffman called Lieutenant Chestnut and identified himself as the person in the photograph holding what appeared to be a "Molotov cocktail."  However, Coffman clarified that the bottle contained apple juice and that the photographs had been taken "previously" to promote his musical band.

That following weekend, a citizen-led demonstration was being held in Jackson in response to George Floyd's murder by a Minneapolis police officer.[1]  As per the affidavit, the demonstration began in the area of the Old Hickory Mall and moved to the downtown Jackson area.  While

---

[1] Exhibit B of the affidavit consists of a photograph and caption drawn from The Jackson Sun. The photograph depicts a man wearing a facemask, sunglasses, and a dark jacket, carrying a sign.  The caption states "Robert Catesby rides a onewheelie holding up a sign during the second day protest at Old Hickory Mall, in Jackson, Tenn., Sunday, May 31, 2020.  Jackson protests the death of George Floyd, and many other prominent African Americans who were killed by police officers."

patrolling the downtown area, an officer recognized Coffman in part through the distinctive jacket worn by Coffman in the Facebook images distributed in the officer safety email. The officer noted what appeared to be "neo-Nazi/white supremacist type symbol on the jacket" worn by Coffman. A different officer watched him drive away in a car bearing license plates registered to Coffman.

On June 1, 2020, Major Kemper discovered a photograph from an online news article authored by The Jackson Sun. The photograph, attached to the affidavit as Exhibit B, portrays the individual identified as Coffman at the demonstrations. However, the name attributed to him in the article is "Robert Catesby." An intelligence analyst with the Jackson Police Department advised Major Kemper that "Robert Catesby" is a possible reference to a 17th century co-conspirator in a plot to "blow up the king of England." Major Kemper subsequently "observed" Coffman's car parked outside the Whitehall Street residence on two occasions. A records check of Coffman's driver's license lists a Whitehall Street address as his residence. The affidavit further notes that Coffman has multiple misdemeanor arrests for alcohol and traffic-related offenses.

The affiant summarizes his training and experience, noting that he was assigned as the Commander of Police Investigative Services and now supervises the Special Operations and Criminal Investigative Divisions of the Jackson Police Department. A significant portion of the affidavit is devoted to describing Coffman's residence and the means through which the affiant identified it as Coffman's own residence. The affiant concludes by asserting that, based on the investigation into the Facebook post, as well as his training and experience, there is cause to believe that Coffman was in possession of a hoax device[2] or otherwise actual improvised explosive

---

[2] "Hoax device" means any device that reasonably appears to be or is purported to be an explosive or incendiary device and is intended to cause alarm or reaction of any type by an official of a public safety agency or a volunteer agency organized to deal with emergencies. T.C.A. § 39-17-1301.

incendiary device in violation of T.C.A. 39-17-1302, therefore justifying the issuance of a search warrant for Coffman's residence.

The warrant was issued, and Jackson police officers executed the warrant to search Coffman's home. They failed to find any explosive weapons or hoax devices but did find two firearms that were lawfully owned by and registered to Coffman as well as marijuana.

## ANALYSIS

The Fourth Amendment provides that "no warrants shall issue, but upon probable cause supported by Oath or affirmation…" U.S. Const. Amend. IV. Thus, in order to be valid under the Fourth Amendment, a search warrant must be supported by probable cause. *United States v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008). "The duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed." *United States v. Laughton*, 409 F.3d 744, 747 (6th Cir. 2005). A finding of probable cause does not require an actual showing of criminal activity but, instead, "requires 'only a probability of substantial chance of criminal activity….'" *United States v. Smith*, 182 F.3d 473, 477 (6th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 244, n.13 (1983)). "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011) (quoting *Rakas v. Illinois*, 439 U.S. 128, 130 n. 1 (1978)).

When "an affidavit is the basis for a probable cause determination that affidavit 'must provide the magistrate with a substantial basis for determining the existence of probable cause.'" *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (quoting *Gates*, 462 U.S. at 239). Accordingly, "the task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the

'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates,* 462 U.S. at 238.  A "totality of the circumstances" approach should be used "when analyzing the sufficiency of a supporting affidavit." *United States v. Neal*, 577 F. App'x 434, 440 (6th Cir. 2014) (quoting *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006)). "Probable cause to search a location is not dependent upon whether the officers already have probable cause or legal justification to make an arrest.  The question is whether the information known by the affiant and conveyed to the magistrate makes it fairly probable that there will be additional contraband or evidence of a crime in the place to be searched."  *United States v. Brooks*, 594 F.3d 488, 494 (6th Cir. 2010).

### A.  The Affidavit Fails to Establish Probable Cause

Coffman argues that the affidavit fails to establish probable cause that evidence of illegal activity would be found at his residence.  Specifically, Coffman asserts that the affidavit lacks a recitation of underlying circumstances and basis of knowledge, rendering it a "bare bones" affidavit. *See United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. Tenn. 1996). The government disagrees.  In their filings, both the government and Coffman seek to provide the Court with additional information about the underlying circumstances in this case.  In particular, the parties request that the Court consider the historical context – both contemporary and early 17th century. Coffman states that the images shared on the band, The Gunpowder Plot's, page, were taken for and shared by him in support of the band's forthcoming album release and that the lyrics quoted in the caption were from a song that Coffman wrote and recorded in said album.  Coffman adds that the Nazi/White supremacist symbols on his jacket are actually "Anti-Nazi" symbols, that the name "Robert Catesby" is actually the thematically-related stage name he uses with his Rock band,

5

The Gunpowder Plot, and that Coffman participated in the above-referenced demonstrations "in support of the movement." The government in turn states, "it is important to note that a state of civil unrest and protest began on May 26, 2020, across the United States in response to the death of George Floyd on May 25, 2020." Gov. Resp. at ¶ 2. They further note, although this is impossible to distinguish in the attachments to the affidavit, that Coffman is wearing a black baseball cap with the words, "BURN THE SYSTEM TO THE GROUND" printed on it. *Id*. at ¶ 3. Additionally, although this is also impossible to see, Coffman is apparently wearing a "Guy Fawkes" mask slung over his shoulder. *Id*. The government links to a history.com article which informatively clarifies that Guy Fawkes was a co-conspirator of Robert Catesby in the 1605 Gunpowder Plot to assassinate King James I of England.

All of the above information provided by the parties and recited by the Court is actually irrelevant to determining whether there was probable cause to issue the search warrant at issue. Crucially, review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Frazier,* 423 F.3d 526, 531 (6th Cir.2005). Because all of the additional context provided by the parties (while potentially relevant at trial) is extraneous to the four corners of the affidavit, the Court cannot consider it in determining whether probable cause exists. The affidavit basically presents the following information in support of its application for a search warrant which the Court will evaluate in turn: 1) The Facebook images posted on "The Gunpowder Plot" page depicting Coffman holding a lighter and an object fashioned to look like a Molotov cocktail; 2) Coffman's presence at demonstrations in response to the death of George Floyd; 3) the appearance of "Neo Nazi/white supremacist symbol" on Coffman's jacket; and 4) the use of the name "Robert Catesby." The Court finds that Coffman's misdemeanor arrests for alcohol and traffic offenses do not contribute

to establishing probable cause to search for evidence of a breach of T.C.A. § 39-17-1302.  The Court gives due consideration to the officer's training and experience.

      The Facebook images depict Coffman, standing in front of a police transport van, holding what appears to be a Molotov cocktail and a lighter.  Significantly, Coffman "re-posted" the images from another page called The Gunpowder Plot.[3]  It is not clear from the affidavit what The Gunpowder Plot is.  The conversation between Lieutenant Chestnut and Coffman sheds some light on the post.  Shortly after Lieutenant Chestnut informed his acquaintance that the police wished to speak with him, Coffman called the Lieutenant and informed him that the apparent Molotov cocktail was not, in fact, a Molotov cocktail.  Rather, it was a prop filled with apple juice that Coffman was using in images to support or promote his musical band.  Coffman stated that the images were taken "previously," presumably not around the date they were posted.  The affidavit does not establish a basis for questioning Coffman's credibility.  Indeed, the highly dramatic and evidently carefully curated appearance of the images and accompanying quote seems to lend credence to the theory that they are promotional images for a Rock band.

      The affidavit next spends some time describing Coffman's attendance at a demonstration in response to the death of George Floyd.  There seems to be a vague inferential thread in the affidavit running from the Facebook images to Coffman's presence at a "citizen-led protest."  This thread is made explicit in the government's response, which emphasizes the contextual importance of a three-night period in which a "five-mile stretch" of Minneapolis, Minnesota, including the police precinct, sustained extensive damage from riots, looting, and fire.  Such context is not

---

[3] Glaringly, the affidavit does not clarify, as both parties now allow, that The Gunpowder Plot is the name of Coffman's musical band, although that information was doubtlessly easily accessible and known by the affiant and would have been highly relevant to Judge Morgan's finding of probable cause.

present in the affidavit and the Court cannot consider it.  There is no indication in the affidavit that the Jackson demonstration was anything but peaceful and lawful or that Coffman's behavior at the demonstrations was indicative of violence.  Similarly, with regard to the alleged neo-Nazi/white supremacist symbols on Coffman's jacket, there is no basis of knowledge established in the affidavit to link the white supremacist symbols on Coffman's jacket with the alleged offense committed.  The government seems to allow this, conceding that  the "statement of the appearance of the jacket served more as identification that the man present at the protest and quoted in the local paper was the same man Facebook from the picture than it was a statement of neo-Nazi/white supremacist beliefs used to further probable cause." Gov. Resp. at ¶ 12.

Finally, the affidavit points to the name "Robert Catesby" given by Coffman to the Jackson Sun for use in their story about the demonstrations.  According to the affidavit, Criminal Intelligence Analyst Sarah Webb,

> advised Major Kemper the 17th century historical figure known as Robert Catesby was known as a co-conspirator in a plan to blow up the king of England.  Based on the investigation, it appears Justin Wade Coffman uses the name Robert Catesby and The Gunpowder Plot as well as the visual pictures of improvised explosive incendiary devices as symbolism in his threatening Facebook post of impending criminal arson.

Aff. at ¶ 3.  The government states, "[a]t a protest in Jackson, the defendant gave a false name of Robert Catesby to the local newspaper which was another reference to The Gunpowder Plot." Gov. Resp. at ¶ 7.  However, as discussed above, the affidavit does not describe what The Gunpowder Plot is a reference to.  There is no discussion whatsoever about The Gunpowder Plot being either the name of a musical band or a 17th century assassination plot.  Notably, the connection between The Gunpowder Plot and Coffman is not fleshed out – the affidavit does not describe Coffman's relationship to The Gunpowder Plot.  Neither does the affidavit describe the

factual circumstances underlying the conclusion that Coffman used the name "Robert Catesby" to intentionally reference a historical figure with murderous designs on King James I.

Probable cause exists if "the facts and circumstances are such that a reasonably prudent person would be warranted in believing that an offense had been committed and that evidence thereof would be found on the premises to be searched." *Greene v. Reeves*, 80 F.3d 1101, 1106 (6th Cir. 1996). Here, to summarize, the affidavit was put forth in support of probable cause the re-posted images of Coffman holding an object fashioned to look like a Molotov cocktail and a lighter, the fact that Coffman re-posted the images from a Facebook page called The Gunpowder Plot, and that he gave a false name to The Jackson Sun that may or may not be a reference to a historical figure who sought to assassinate a 17th century European monarch. Without a doubt, the most powerful evidence in support of probable cause are the Facebook images. However, the strength of that evidence was mitigated by Coffman's assertion that the bottle in the images was filled, not with an accelerant, but with apple juice and that the images were merely taken to promote his band. Again, the affidavit does not lay a foundation for questioning the veracity of this statement. T.C.A. § 39-17-1302 provides that it is a defense to prosecution under the section that a person's conduct "was incident to using the weapon in a manner reasonably related to a lawful dramatic performance." Arguably, Coffman's stated reasons of creating the images as promotional, artistic, images for his musical band falls under that defense. Therefore, considering the totality of the affidavit, a reasonably prudent person would not be warranted in believing that Coffman was in possession of a hoax device or improvised explosive incendiary device in violation of T.C.A. § 39-17-1302. And, as discussed below, even if there were enough evidence to do so, a reasonably prudent person would not be warranted in believing that evidence of the offense would be found at Coffman's residence.

9

### B. The Affidavit Fails to Establish a Nexus

When search of a specific location is sought, the affidavit must establish "a nexus between the place to be searched and the evidence to be sought." *United States v. Carpenter,* 360 F.3d 591, 594 (6th Cir.2004). "The critical element in a reasonable search is not that the owner of property is suspected of crime but that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought." *United States v. Frazier,* 423 F.3d 526, 536 (6th Cir. 2005) (quoting *Zurcher v. Stanford Daily,* 436 U.S. 547, 556, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)). In this case, even assuming, *arguendo*, that there is probable cause establishing that Coffman committed a crime, the affidavit does not establish reasonable cause to believe that evidence of crime was located in Coffman's residence. The affiant merely noted that Coffman's license plate and driver's license were registered to the 1243 Whitehall address and that Coffman's car was parked in front of the home at 3:50 p.m. and 7:45 p.m. on June 1, 2020. That information may go towards establishing that Coffman has some proprietary connection to the residence, or even that he lives there, but it does nothing to establish a nexus between the residence and evidence of a violation of T.C.A. § 39-17-1302. In defending the existence of a nexus, the government asserts that Coffman "admitted to law enforcement that he was in possession of the Molotov Cocktail, which was the focus of the search." Gov. Resp. at ¶ 8. Additionally, the government argues that the materials used to fashion the Molotov cocktail "are all common household items and given the illegal and suspicious nature of creating such a device it is prudent to both create and store such an item in an area in which the owner has control of the area and can secure it." *Id*.

In the first instance, the affidavit does not actually establish that Coffman admitted to law enforcement that he was in possession of a Molotov cocktail. The relevant passage of the affidavit

10

reads, "The caller [Justin Coffman] stated that he was in fact the person in the photograph on his Facebook page holding a 'Molotov Cocktail.' The caller stated that the bottle contained apple juice and that the photograph had been taken previously to be used in support of his musical band." Coffman's statement that he was the person in the photograph holding the purported Molotov cocktail establishes neither that his possession of the item was contemporaneous to the application for a search warrant nor that he kept it in his residence. He may well have been handed the item for purposes of taking the photograph and immediately discarded it. In fact, Coffman's statement that the photograph was taken previously undermines the argument that he was currently in possession of the alleged Molotov cocktail. In short, the Court does not have any information to infer from the affidavit that Coffman was in possession of the item on the date of the warrant application.

The government's second argument may well have gone towards establishing a sufficient nexus between the crime charged and Coffman's residence, had there been a basis of knowledge for such an argument averred in the affidavit. However, the theory that Molotov cocktails are made from common household items and that it is prudent to create and store items in areas that an owner has control over, finds no support in the affidavit. Indeed, the Court considers reasonable the alternate argument that it is actually far more prudent to store incendiary devices outside of one's residence. But both arguments are pure conjecture without a basis of reliable support, which the Court does not find in the affidavit. *See United States v. Savoca,* 761 F.2d 292, 295 (6th Cir.1985) (the inference that bank robbers tend to conceal evidence in motel rooms, standing alone, is insufficient to support the search of two bank robbers' hotel room); *see also Frazier*, 423 F.3d 526 (defendant's status as a drug dealer, without more, is insufficient to tie the alleged criminal activity to his residence). Similarly, the, as previously discussed, tenuous evidence that

Coffman violated T.C.A. § 39-17-1302, is insufficient to tie the alleged criminal activity to the 1243 Whitehall address.

### C. Evidence is Not Admissible under *Leon*'s Good Faith Exception

Evidence derived from the search of Coffman's residence is not admissible under the good faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897, 920-21 (1984) (holding that "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.... [i]n most such cases, there is no police illegality and thus nothing to deter") That is, when an officer acts in reasonable reliance on a search warrant, the Fourth Amendment exclusionary rule does not bar the use of evidence obtained through that search warrant, even if the warrant was not supported by probable cause. *Id*. at 926. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id*. *See Messerschmidt v. Millender*, 565 U.S. 535, 547 (2012) (stating that the threshold to find that an officer failed to act in good faith "is a high one").

In this instance, reasonable officers acting on the search warrant could not have harbored an objectively reasonable belief in the existence of probable cause, given the "bare bones" nature of the affidavit. An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a "bare bones" affidavit. *See United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir. 1996). A bare-bones affidavit, in turn, is commonly defined as one that states only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (quoting *Weaver*, 99 F.3d at 1378). Put more

12

simply, a bare-bones affidavit is a conclusory affidavit, one that asserts "only the affiant's belief that probable cause existed." *United States v. Williams*, 224 F.3d 530, 533 (6th Cir. 2000) (quoting *United States v. Finch*, 998 F.2d 349, 353 (6th Cir. 1993)). It provides nothing more than a mere "guess that contraband or evidence of a crime would be found," *United States v. Schultz*, 14 F.3d 1093, 1098 (6th Cir. 1994), either "completely devoid" of facts to support the affiant's judgment that probable cause exists, *United States v. Carpenter*, 360 F.3d 591, 595–96 (6th Cir. 2004) (en banc), or "so vague as to be conclusory or meaningless." *Frazier*, 423 F.3d 526, 536 (quoting *Carpenter*, 360 F.3d at 596); *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2017). An affidavit is not bare bones if, although falling short of the probable-cause standard, it contains "a minimally sufficient nexus between the illegal activity and the place to be searched." *Carpenter*, 360 F.3d at 596. If the reviewing court is "able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been"—"some modicum of evidence, however slight"—"between the criminal activity at issue and the place to be searched," then the affidavit is not bare bones and official reliance on it is reasonable. *Laughton*, 409 F.3d at 749–50; *White*, 874 F.3d 490, 496–97.

      Critically, as discussed above, there is not even a modicum of evidence connecting the criminal activity with the place to be searched. The government, addressing *Leon*'s applicability, argues that Coffman "confirmed to Lt. Chestnut that he was in possession" of a hoax device; the photo was shared by a page titled "The Gunpowder Plot"; Coffman gave a false name to the local newspaper, "a suspicious behavior" when quoted at a protest; and that false name was linked to The Gunpowder Plot. Again, the affidavit does not establish that Coffman in any way "confirmed" that he was in possession of a hoax device. According to the affidavit, Coffman stated that he was holding an item fashioned to look like a Molotov cocktail in a photograph taken previously to

13

promote his band. There is no indication from that statement that he was in possession of that object at the time the affidavit was sworn to or that the object would be found in his residence. The photographs themselves were evidently not taken in Coffman's residence – the warrant does not make any connection to the residence outside of establishing that Coffman, perhaps, lives there. As the Sixth Circuit has found, "a suspect's mere presence or arrest at a residence is too insignificant a connection with that residence to establish that relationship necessary to a finding of probable cause." *United States v. Savoca,* 761 F.2d 292, 297 (6th Cir.1985) (quoting *United States v. Flores,* 679 F.2d 173, 175 (9th Cir.1982)); *see also United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (suspect's' arrest outside his home with crack cocaine on his person was not sufficient to establish fair probability that his residence would contain evidence of wrongdoing, and thus police officer's affidavit was insufficient to establish probable cause for issuance of search warrant, where suspect was arrested for non-drug offense, and there was no evidence that suspect was known drug dealer.) Likewise, Coffman's mere presence at the residence is insufficient to establish a fair probability that contraband would be found in his home. Furthermore, the government is, for the first time, asserting that giving a false name to a newspaper is a "suspicious activity." Assuming that it is, although this Court sees no basis in the affidavit for finding that a desire to be anonymous to a newspaper and its audience is inherently suspicious, there is no established "link" between the false name and The Gunpowder Plot. Again, there is no elaboration as to the meaning of The Gunpowder Plot.

To summarize, the affidavit asks the Court to make a series of inferences from disparate events or facts without establishing the relationships between those inferences and the basis of knowledge underpinning said inferences. Its assertion that Coffman uses the name Robert Catesby, The Gunpowder Plot, and the Facebook images as threats of "impending criminal arson"

14

is therefore conclusory. And even more attenuated and conclusory is the assertion that there is even a minimally sufficient nexus between evidence of criminality and Coffman's residence. Therefore, the Court will not apply the good-faith exception to validate the search because the affidavit is "so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *Laughton,* 409 F.3d at 748.

"Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion." *Segura v. United States*, 468 U.S. 796, 804, 104 S. Ct. 3380, 3385, 82 L. Ed. 2d 599 (1984). Here, the evidence obtained from Coffman's residence on June 2, 2020 is a direct result of unreasonable reliance on an affidavit lacking probable cause. Consequently, all evidence obtained from Coffman's residence on June 2, 2020, and evidence of the fruits of the search of Coffman's residence, should be suppressed.

## CONCLUSION

For the foregoing reasons, the Court holds that the state search warrant lacked probable cause to search Coffman's residence for evidence of a violation of T.C.A. § 39-17-1302. Further, the Court holds that the affidavit was so bare bones as to bar the application of the good faith exception. Consequently, the Court holds that the evidence found in Coffman's residence is a direct result of an unconstitutional search. Accordingly, Coffman's Motion is **GRANTED**, and the evidence found pursuant to the search of the residence is suppressed.

**IT IS SO ORDERED.**

                                              **s/ S. Thomas Anderson**
                                              S. THOMAS ANDERSON
                                              CHIEF UNITED STATES DISTRICT JUDGE

Date:  July 16, 2021.